FILED
CLERK, U.S. DISTRICT COURT
04/29/16
CENTRAL DISTRICT OF CALIFORNIA
BY: GR DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHRISTOPHER HERNANDEZ,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. CV 15-01393-RAO

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Plaintiff Christopher Hernandez ("Plaintiff") challenges the Commissioner's denial of his application for supplemental security income ("SSI"). For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## II. PROCEEDINGS BELOW

On January 31, 2012, Plaintiff protectively filed an application for SSI alleging disability beginning January 7, 2010. (Administrative Record ("AR") 148-56). His application was denied initially on June 22, 2012, and on reconsideration on November 5, 2012. (AR 51-68.) On December 3, 2012, Plaintiff filed a written request for hearing—and a hearing was held on July 12, 2013. (AR 24-50, 86-95.)

Represented by counsel, Plaintiff appeared and testified at the hearing. (AR 26-40.) A vocational expert also appeared and testified at the hearing. (AR 42-45.)

On December 6, 2013, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, as it is defined in the Social Security Act,[1] since the date his SSI application was filed. (AR 20.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (AR 1-6.) On July 13, 2015, Plaintiff filed his complaint in this court challenging the final decision of the Commissioner. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the application date. (AR 15.) At **step two**, the ALJ found that Plaintiff had the following severe impairments: cardiomegaly, congestive heart failure, hypertension, and morbid obesity. (*Id.*) At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments "that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform sedentary work … except he is limited to sitting about six hours of an eight-hour workday and standing and/or walking for two hours out of an eight-hour workday provided he does not stand for more than ten minutes at one time or walk more than approximately 100 feet at one time. He is limited to no more than occasional stooping, kneeling, crouching, crawling, balancing and climbing of ramps and stairs while being completely restricted from climbing

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

> ladders, ropes or scaffolds. Lastly, he is to avoid concentrated exposure to extreme cold or heat, workplace hazards, and pulmonary irritants.

(AR 16.)

At **step four**, the ALJ found that Plaintiff had no past relevant work. (AR 19.) At **step five**, based on Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff is able to perform. (AR 19-20.) Accordingly, the ALJ found that Plaintiff was not disabled. (AR 20.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff argues that the ALJ did not: (1) properly assess his credibility; or (2) properly develop and consider the vocational evidence and issues at step five. (*See* Plaintiff's Memorandum in Support of Complaint ("Pl. Memo.") at 3-11.) In turn, the Commissioner argues: (1) that the ALJ did, in fact, properly assess Plaintiff's credibility; and (2) that substantial evidence supported the ALJ's fifth step findings. (*See* Memorandum in Support of Defendant's Answer ("Def. Memo.") at 3-10.)

### A. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff contends that the ALJ's credibility analysis and his consideration of Plaintiff's subjective complaints were improper and constitute reversible error. (Pl. Memo. at 8.) For the reasons set forth below, the Court disagrees.

#### *1. Plaintiff's Hearing Testimony*

At the administrative hearing, Plaintiff testified that he was born in 1984, attended school in Mexico through the sixth grade,[2] and did not have a GED. (AR 30.) Plaintiff's only income over the prior 15-year period was $6,000 in 2003 when he had a part-time job working at a cemetery for nine months. (AR 31-32.)[3]

---

[2] When Plaintiff was asked how far he had gotten in school, he said: "Like into seventh grade[.]" (AR 30.) Later, however, the ALJ and vocational expert found that Plaintiff had a "marginal" education (AR 41-42), which is generally considered to be formal schooling at a 6th grade level or less. *See* 20 C.F.R. § 416.964(b)(2).

[3] The ALJ and Plaintiff's attorney agreed that it was "close" whether Plaintiff's past employment constituted substantial gainful activity, but the ALJ ultimately decided to "rule in [Plaintiff's] favor on that issue" and found that "there's no past relevant work for us to be concerned with." (AR 32-33.)

Plaintiff testified that he had been diagnosed with obesity, and as having high blood pressure, cardiomegaly, congestive heart failure, and edema. (AR 33-34.) He denied any mental or emotional issues. (AR 34.) Plaintiff testified that he took two medications to treat his high blood pressure (Losartan and Metoprolol) and one to treat edema (Lasix)—and said the medications did not cause side effects. (AR 37.)

Plaintiff testified that he could lift and/or carry 20 pounds, sit for two hours before having to get up, stand for 10 minutes before having to sit down, and walk 50 to 100 feet before having to rest. (AR 35-36.) He identified shortness of breath as a significant problem, brought on by activities such as bending over or walking, and also stated that when he stands for too long, his knees and chest hurt, he experiences shortness of breath, and his "neck … feels really stiff." (AR 36.)

Plaintiff also testified that his edema,[4] which for him manifests as swelling below his knees, is a daily problem that forces him to elevate his feet above heart level for one hour every two hours four or five times each day in order to relieve swelling and numbness. (AR 37-39.) Plaintiff confirmed that he could sit for two hours at a time, but then added: "like I said …, it's going to affect my legs." (AR 39.)

***2. Applicable Legal Standards***

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572, F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*

---

[4] "Edema means swelling caused by fluid in your body's tissues. It usually occurs in the feet, ankles and legs, but it can involve your entire body." National Institute of Health, "Edema," *available at* https://www.nlm.nih.gov/medlineplus/edema.html (last visited April 18, 2016).

*v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

***3. Discussion***

Plaintiff's credibility argument hinges on a single testimonial allegation—his claim that he must frequently elevate his legs to relieve edema-induced numbness, swelling, and pain. Because the inclusion of a leg-elevation requirement in the RFC adopted by the ALJ would likely lead to a disability finding,[5] Plaintiff contends that ALJ erred by finding that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms" were "not entirely credible" (AR 17); accepting his testimony regarding his limited ability to stand and walk "while simultaneously rejecting [his] testimony . . . that he must elevate his legs approximately every 2 hours or 4 to 5 times a day." (Pl. Memo. at 5.)

The ALJ explained his decision, in part, as follows:

> In terms of the claimant's alleged cardiac condition, hypertension and morbid obesity, the undersigned finds that the claimant is limited to sedentary work with some functional restrictions. Specifically, he is limited to sitting, standing and/or walking for two hours out of an eight-hour workday provided he does not stand for more than ten minutes at one time or walk more than approximately 100 feet at one time. This limitation is in consideration of his testimony that he has

---

[5] In his third hypothetical to the vocational expert, the ALJ added the requirement that the hypothetical person would need to elevate their legs for 30 minutes every two hours to the second hypothetical which mirrored the ALJ's RFC determination. (AR 40-44.) The ALJ asked the vocational expert if he could identify any jobs that a hypothetical person with those limitations could perform. (AR 45.) In response, the vocational expert said "[n]o work, Your Honor." (*Id*.)

> significant limitations with walking and standing due to difficulty breathing and his weight. … [¶]
>
> … As for his alleged need to elevate his feet frequently throughout the day there is not medical opinion in support of this claim nor any evidence showing that he needs to elevate his feet throughout the day. As such, the undersigned finds that a sedentary [RFC] determination with the restrictions in standing, walking and sitting per the claimant's testimony, not only adequately considers his physical capacity per the medical records but also generously considers his subjective complaints.

(AR 18.)

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making his or her credibility determination. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ identified objective medical evidence supporting Plaintiff's testimony about his standing and walking limitations (*see, e.g.*, AR 17 (noting that, in September 2011, Plaintiff went to the emergency room complaining of breathing issues and weighed 400 pounds), 17 (noting that, in January 2012, Plaintiff went to the emergency room complaining of chest pain and shortness of breath and weighed 420 pounds), 18 n.1 ("From the medical evidence, the claimant weighs between 504 and 533 pounds, which places him in the third level of extreme obesity.")), but he found no objective medical evidence to support Plaintiff's leg elevation claim. (*Id*.)

To rebut that conclusion, Plaintiff cites to emergency room records showing that Plaintiff regularly suffered from edema. (*See* Pl. Memo. at 7-8 (citing AR 204, 209-10, 214-15, 305-06, 320-21, 323, 332, 334, 551-52, 597, 616, 622).) However, the fact that Plaintiff suffers from edema—a fact the ALJ did not challenge (*see* AR 17 (noting that Plaintiff was found upon examination to have edema on at least two separate occasions))—does not substantiate Plaintiff's testimony that he frequently needed to elevate his legs. Nor do the records so substantiate Plaintiff's testimony. Rather, as the Commissioner argues, it appears that Plaintiff's treatment plan

consisted primarily of diet and lifestyle modifications, more physical activity, and diuretic medications. (*See, e.g.*, AR 205, 311-12, 323, 519, 551, 620.) Plaintiff has not identified any objective medical records in which it was suggested that he frequently elevate his legs to address his edema symptoms.

Accordingly, the Court finds that this reason offered by the ALJ constitutes a clear and convincing reason that is supported by substantial evidence in the record.

Furthermore, "[t]he ALJ may consider whether the medical opinions support plaintiff's subjective claims in making a credibility determination." *Hernandez v. Astrue*, 2010 WL 1498988, at *4 (C.D. Cal. Apr. 12, 2010) (citing *Burch*, 400 F.3d at 680). At Plaintiff's hearing, the ALJ asked Plaintiff's counsel whether a treating physician's opinion would be procured for the record. (AR 46-47.) When counsel expressed doubt, the ALJ asked whether counsel had a problem with interrogatories being sent to a medical expert. (AR 47.) Counsel did not object. (AR 47-48.)[6] On September 20, 2013, in response to the ALJ's interrogatories, Harvey Alpern, M.D., indicated that, with treatment, Plaintiff should not have edema or need to elevate his legs. (AR 595.) Plaintiff has not identified any contrary medical opinions.

Accordingly, the Court finds that this reason offered by the ALJ constitutes a clear and convincing reason that is supported by substantial evidence in the record.

Finally, the ALJ found that Plaintiff was "non-compliant with his treatment . . . by not taking his prescribed medication and not adhering to a diet and exercise program as advised by his doctors." (AR 16; *see also Molina*, 674 F.3d at 1113 (a claimant's failure to adhere to a course of treatment without justification can be a permissible reason to discount his credibility).) Plaintiff does not address the ALJ's assertion about his failure to follow a diet and exercise program, but argues that he did not consistently take his medications because "for most of the relevant time he

---

[6] Counsel did, however, clearly state his preference for a medical expert instead of a consultative examiner. (AR 47 ("ATTY: Well, an ME might be better than a CE. [¶] ALJ: Okay. [¶] ATTY: The CEs I, I really am suspect of.").)

was without medical insurance or the medications had side effects which caused [him] to stop taking the medications." (Pl. Memo. at 8.)

Plaintiff's second assertion is at odds with his hearing testimony:

> Q Do you take any medications?
> A Yes, I do.
> Q All right. What are you taking?
> A One is called -- for -- there's, there's two for my blood pressure and one for the edema. The edema one it's called Lasix and the other ones for the blood pressure they're called Losartan and Metoprolol.
> Q Do you have any side effects from these medications?
> A No.

(AR 36-37.) Thus, the Court finds this assertion not tenable.

The Court also finds that Plaintiff's first assertion is unpersuasive on this record. To be sure, an ALJ may not "reject[] … a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, however, the records Plaintiff cites do not establish an inability to obtain his medications. (*See* AR 555, 608.) At least one record suggests Plaintiff had not filled or picked up his prescriptions. (*See* AR 555 ("Patient states that he ran out of lasix and has not been able to get a refill for a week. … Patient has not been able to pick up prescription today.").) Moreover, it appears as though Plaintiff was informed of or provided community resources and financial assistance to eliminate or reduce the cost of his treatment on a number of occasions. (*See* Def. Memo. at 7 (citing AR 338, 625, 827). *Cf.* SSR 96-7p ("The explanations provided by the individual [about why he failed to continue a course of treatment] may provide insight into the individual's credibility. For example: [¶] … The individual may be unable to afford treatment *and may not have access to free or low-cost medical services*.") (emphasis added).)

The record further suggests that Plaintiff may have gotten medication during trips to Mexico. (*See* AR 625.)

In sum, the Court finds that the ALJ's credibility determination was clear and convincing and supported by substantial evidence, and therefore must be upheld.

**B. <u>The ALJ's Step Five Finding Is Not Supported by Substantial Evidence</u>**

Plaintiff further argues that the ALJ failed to properly develop the record and analyze his ability to perform the jobs the vocational expert identified at step five of the sequential evaluation process "given his combination of impairments … [and] marginal education in Mexico." (*See* Pl. Memo. at 9.) The Commissioner argues that Plaintiff waived this argument by not asking the vocational expert at the hearing "whether [his] educational history prevented him from performing" the three occupations the vocational expert identified as occupations Plaintiff would be able to perform: addresser (Dictionary of Occupational Titles ("DICOT") 209.587-101), lens inserter (DICOT 713.687-026), and parimutuel-ticket checker (DICOT 219.587-010). (*See* Def. Memo. at 8.) However, the Court is not persuaded by the Commissioner's argument, because it is she who must show that the claimant can perform other work in light of his RFC, age, work experience, and *education level*. *See Silveira v. Apfel*, 204 F.3d 1257, 1261-62, n.14 (9th Cir. 2000). Accordingly, the Court proceeds to address the merits of Plaintiff's claim.

The Commissioner is allowed by regulation to utilize a claimant's numerical grade level as a factor in evaluating his "ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability." *See* 20 C.F.R. § 416.964(a). Here, therefore, based largely on Plaintiff's completion of the sixth grade in Mexico, the ALJ, with the vocational expert's assistance, determined that Plaintiff had a "marginal" education, *i.e.*, the "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." *See* 20 C.F.R. § 416.964(b)(2) ("marginal education" is considered to be "formal schooling

at a 6th grade level or less"). And as Respondent notes, each of the jobs selected by the vocational expert is simple and unskilled, with a specific vocational preparation of 2. (*See* AR 43-44; *see also* SSR 00-4p, 2000 WL 1898704, at *3 ("[U]nskilled work corresponds to an SVP of 1-2[.]").)

However, a completed numerical grade level does not irrefutably establish a person's ability to meet vocational requirements if there is contradictory evidence as to one or more of the sub-factors (*i.e.*, reasoning ability, communication skills, and arithmetical ability). *See Hernandez v. Colvin*, 2015 WL 1250176, at *6 (E.D. Cal. Mar. 18, 2015) (citing 20 C.F.R. §§ 404.1564(b), 416.964(b); *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 451 (6th Cir. 1990)); *see also Boone v. Sec'y of Health & Human Servs.*, 595 F. Supp. 758, 759 (E.D. Mich. 1984) (a grade level completed in school may not represent a person's actual educational abilities).

Here, Plaintiff contends that he does not possess the communication skills required to perform the "addresser" occupation. (*See* Pl. Memo. at 9-10 ("Plaintiff maintains that his marginal education in Mexico would not allow him to successfully perform the occupation of addresser due to the GED language skill requirements of that occupation which far exceed Plaintiff's abilities.").)

All jobs listed in the DICOT have general education development ("GED") levels—defined as "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Dictionary of Occupational Titles*, Appendix C—Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). A job's GED level pertains to, among other things, the reading, writing, and speaking development level necessary to properly perform that job, ranging from 1 (the lowest level) to 5 (the highest level). *Id.* In terms of language skills, addresser is listed as GED level two, which has the following requirements:

> READING: Passive vocabulary of 5,000-6,000 words. Read at a rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning,

> spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses.

(DICOT 209.587-101.)

While Plaintiff testified at the administrative hearing without the assistance of an interpreter, in a 2012 Disability Report, Plaintiff said he could not speak and understand English. (AR 175.)[7] Further, when asked at the hearing whether he could read and write in English, Plaintiff responded: "Most of it, yeah. It's -- I can get -- a little bit complicated (INAUDIBLE), but most of it yeah." (AR 41.)

On this record, the Court finds the evidence ambiguous or mixed both as to Plaintiff's English language skills and the effect of the combination of his language skills and education level on his ability to perform the addresser position identified by the ALJ. *See Mayes*, 276 F.3d at 459-60 (an ALJ must develop the record further when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence). Similarly, the Court finds the record is insufficiently developed to determine whether Plaintiff has the reasoning, mathematical and language skills to allow him to perform work as a lens inserter or parimutel-ticket checker. While the lens insert position may be equally or less stringent than the requirements for addressers, the requirements for a parimutel-ticket checker appears to have more stringent reasoning, mathematical, and language skills requirements. *Compare* Addresser: DICOT 209.587-101

---

[7] The Court acknowledges that Plaintiff also stated in the Report that he could read and understand English and could write more than his name in English. (AR 175.) However, the Court assigns these statements less weight given the other evidence discussed herein which contradicts it.

(Reasoning Skills (GED-R-2), Mathematical Skills (GED-M-1), and Language Skills (GED-L-2)), *with* Lens Inserter: DICOT 713.687-026 (Reasoning Skills (GED-R-1), Mathematical Skills (GED-M-1), and Language Skills (GED-L-1) *with* Parimutel-Ticket Checker: DICOT 219.587-010 (level three reasoning, mathematical, and language skills).

For the foregoing reasons, the Court concludes that remand is appropriate to allow the ALJ to further develop the record regarding Plaintiff's educational, as well as English language skills, and evaluate whether Plaintiff can perform the jobs identified by the VE.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 29, 2016

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**